INSIDE RADIO, INC. and Gerard Del Colliano, Plaintiff,

v.

CLEAR CHANNEL COMMUNICATIONS, INC., Defendant.

Clear Channel Communications, Inc., Plaintiff,

v.

Inside Radio, Inc., Defendant.

No. 01 CIV. 6645 LAKGWG, 02CIV.1345LAKGWG.

United States District Court, S.D. New York.

July 9, 2002.

---

Richard S. Mandel, Cowan, Liebowitz & Latman, P.C., New York, NY, for Clear Channel Communications, Inc., Plaintiff in 02 Civ. 1345.

Ronald J. Rosenberg, Edward M. Ross, Rosenberg Calica & Birney LLP, Garden City, NY, for Inside Radio, Inc., Defendant in 02 Civ. 1345.

## OPINION AND ORDER

GORENSTEIN, United States Magistrate Judge.

Clear Channel Communications, Inc. ("Clear Channel") has moved for an order, pursuant to Fed.R.Civ.P. 15(a), granting it leave to file a second amended complaint in its action against Inside Radio, Inc. and its owner Gerard Del Colliano (collectively "Inside Radio"). For the following reasons, the motion is granted.

### BACKGROUND

By complaint dated November 6, 2000, Clear Channel brought suit against Inside Radio in the Southern District of New York. See Complaint in Docket Number 00–8486, reproduced in Ex. A to the Declaration of Edward M. Ross, dated May 29, 2002 ("Ross Dec."). This complaint was superseded by an amended complaint, dated April 25, 2001. See First Amended Complaint, reproduced as Ross Dec., Ex. B. The amended complaint asserted five causes of action: (1) tortious interference with economic relations; (2) tortious interference with contractual relations; (3) libel; (4) business disparagement; and (5) as to Del Colliano only, violation of Racketeer Influenced and Corrupt Organizations Act ("RICO"). See id. at 23–30. The gist of the complaint was that Inside Radio published defamatory statements about Clear Channel as part of a scheme to extort money from Clear Channel.

Soon after the amended complaint was filed, Clear Channel discontinued its suit in the Southern District of New York and filed another complaint on May 22, 2001, in a Texas state court. This complaint asserted causes of action for tortious interference with business relations, prospective business relations, contractual relations, and prospective contractual relations. See Plaintiff's Original Petition and Application for Injunctive Relief, reproduced in Notice of Motion, dated May 15, 2002 ("Notice of Motion"), Ex. A. The Texas suit, while repeating many of the allegations in the previous action, did not contain any claims for libel or defamation (or a RICO violation). On June 13, 2001, Inside Radio removed Clear Channel's suit to Texas federal court. See Declaration of Richard S. Mandel, Esq., In Sup-

port of Motion to Amend, dated May 15, 2002 ("Mandel Dec.") at ¶ 3.

Inside Radio thereupon filed a motion to dismiss or in the alternative to transfer the suit to this Court. *Id.* In response to the motion, Clear Channel filed a "First Amended Original Complaint" in the Texas federal court in August 2001, *see* Notice of Motion, Ex. B, which again did not include any claim for defamation. On January 17, 2002, the Texas federal court transferred the case to this Court, where it was assigned docket number 02–1345. *See* Mandel Dec. at ¶ 4.

At a conference held on the record on April 22, 2002, this Court consolidated the transferred case (Docket No. 02–1345) with a previously-filed action in which Inside Radio had sued Clear Channel (Docket No. 01–6645). On the same date, the Court issued a scheduling order covering both cases that provided in part that "the parties may move to amend the pleadings ... no later than May 15, 2002." On May 15, 2002, Clear Channel filed the instant motion for leave to file a Second Amended Complaint.

The proposed Second Amended Complaint makes allegations similar to those in the First Amended Original Complaint. *See* Notice of Motion, Ex. F. The most significant difference for purposes of the instant motion is that the proposed Second Amended Complaint includes a cause of action for defamation. The statements that underlie the cause of action for defamation are alleged to have been published by Inside Radio between September and November 2000. The statements at issue include assertions that Clear Channel cut vacation days for non-union employees, capped and/or cut salespeople's compensation, was laying off certain employees, mandated that all of its stations buy syndicated programming only from Clear Channel, instituted "massive budget cuts" in its New York cluster of stations, and threw a party for certain personnel even as other employees were being fired. These statements overlap in large part with a series of statements that were included in the First Amended Original Complaint. In the First Amended Original Complaint, the statements were used to support Clear Channel's allegations that Inside Radio had published these statements as part of a scheme to extort money from Clear Channel and that the statements were false. What is new in the proposed Second Amended Complaint is that these statements are also being used to support a claim for defamation.

## DISCUSSION

Generally "leave [to amend a complaint] shall be freely given," Fed.R.Civ.P. 15(a), because "pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated, and 'mere technicalities' should not prevent cases from being decided on the merits." *Monahan v. New York City Dept. of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000) (citations omitted), *cert. denied*, 531 U.S. 1035, 121 S.Ct. 623, 148 L.Ed.2d 533 (2000). Indeed, "it is rare that such leave should be denied." *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991) (citation omitted). Nonetheless, "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... [or] futility of amendment' will serve to prevent an amendment prior to trial." *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir.2002) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or

bad faith." *Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir.1993).

### A. *Prejudice and Bad Faith*

Here, Inside Radio asserts that the proposed amended complaint is sought in bad faith and would be "severely prejudicial" to Inside Radio. Memorandum of Law in Opposition to Clear Channel's Motion for Leave to Amend, dated May 29, 2002 ("Opp. Mem.") at 1. The basis for their argument is a simple one. Inside Radio had a lawsuit pending in New Jersey state court against its own insurer regarding the coverage of its insurance policy. Inside Radio asserts it was "specifically induced" to settle the New Jersey suit in April 2002 under the belief that Clear Channel had "intentionally withdrawn its libel and defamation claims, and that as a result, the potential liability of the insurance companies and the broker-defendants had been severely lessened and diminished." *Id.* at 1–2 (emphasis omitted).

■ Inside Radio provides no evidence, however, that Clear Channel made some concerted effort to cause Inside Radio to settle its suit. All Inside Radio can point to is (1) the fact that Clear Channel had omitted its libel and defamation claims in the Texas complaint and (2) a statement on a Clear Channel website that Clear Channel's lawsuit "has never been about libel." But the mere fact that Clear Channel at one point in this litigation indicated that it was not pursuing a libel claim is insufficient to support an inference that Clear Channel did so with the specific intention of "inducing" Inside Radio to compromise its own claim against its insurer. The facts alleged by Inside Radio thus do not

demonstrate that Clear Channel acted in bad faith to induce Inside Radio to settle its insurance claims.[1]

With respect to prejudice, Clear Channel correctly points out that it will be "prejudiced" by the addition of the defamation claim. But whether Inside Radio will be "prejudiced" is not the end of the inquiry because any motion to add a cause of action will inevitably "prejudice" the opposing party by virtue of the necessity to defend against the new claim. Rather, the issue is whether the prejudice the opposing party will suffer is the sort that the law will protect against. In the context of a motion to amend a pleading, prejudice is generally found when the assertion of the new claim would " '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.' " *Monahan v. New York City Dept. of Corr.*, 214 F.3d at 284 (citation omitted). None of these factors is at issue here. Because the new claim involves essentially the same facts underlying the previous claims, Inside Radio will not be required to expend significant additional resources to conduct discovery and prepare for trial on the proposed new claim. In addition, because discovery has not yet concluded, granting the motion will not significantly delay resolution of the dispute. Finally, no party has suggested that granting the motion will prevent Inside Radio from bringing a timely action in another jurisdiction.

Instead, Inside Radio points to another type of prejudice entirely. It argues that

---

1. Inside Radio also notes that Clear Channel "boasted" on its website that Del Colliano's insurance companies were denying coverage of his claims. The statement at issue, however, does not provide any evidence of Clear Channel's intentions with respect to its pursuit of a libel claim. Instead, the statement merely focuses on the fact that Inside Radio's insurer had denied coverage of the entire case and that "extortion" was not within the terms of Inside Radio's insurance policy. *See* Ross Dec., Ex. H. at 2.

if Clear Channel had not originally dropped its defamation and libel claims, Inside Radio would have achieved a larger settlement in its insurance claim case or would have won a larger award at the trial of that claim. Because Inside Radio settled its insurance coverage claims under the assumption that the defamation and libel claims had been permanently dropped, it asserts that it now will have insufficient insurance coverage to defend against the proposed new claims. Thus, it argues that it will be "prejudiced" by any grant of leave to amend.[2]

As should be obvious, however, any prejudice that may inure to Inside Radio is attributable not to the grant of leave to amend but rather to Inside Radio's own decision to settle its insurance coverage suit long before the scope of the instant litigation could be finally determined. When it settled its claim, Inside Radio was on notice that the rules governing civil actions might operate to change the contours of this suit in any number of ways. As a sophisticated party, represented by counsel, Inside Radio was chargeable with knowledge that claims for relief in federal litigation are subject to amendment based on Fed.R.Civ.P. 15—including, for example, the addition of supplemental allegations under Rule 15(d) or amendments under Rule 15(a). This possibility either actually was or should have been factored into the value of any settlement of the case. As a result, Inside Radio cannot now be heard to argue

that one of the eventualities common in litigation—the grant of leave to amend a pleading—was an unforeseeable event from which they must receive protection.

Certainly, there is no basis for burdening Clear Channel with the consequences of Inside Radio's own choice to settle its insurance claim. In situations where no insurance coverage had ever been available to a party, case law has recognized that the lack of such coverage is not the type of prejudice that will bar leave to amend. *See, e.g., Finlay v. Simonovich,* 1997 WL 746460, at * 3 (S.D.N.Y. Dec.2, 1997); *Int'l Paving Systems, Inc. v. Van–Tulco, Inc.,* 866 F.Supp. 682, 693 (E.D.N.Y.1994); *Poulson v. Beez Bugeez, Inc.,* 1986 WL 11457, at *1 (S.D.N.Y. Oct.3, 1986). Inside Radio is in an even less sympathetic position than parties who never had the opportunity to insist on coverage. If its allegations are credited, Inside Radio squandered an opportunity to maintain coverage that many parties do not have at all.

### B. *Futility*

■ Inside Radio argues briefly that the proposed amendment should be denied because the defamation claim "fails to state a claim for relief and is therefore futile, as a matter of law." Opp. Mem. at 6–7. When a proposed amendment is opposed on the ground of futility, it is reviewed under the same standard that governs a motion to dismiss under Fed.

2. For purposes of this motion, the Court accepts Inside Radio's premise that the result of the litigation against its insurer would have been more favorable had there been a defamation claim pending at the time. Clear Channel, however, offers a convincing argument that if the defamation and libel claims were not originally dropped, the insurance settlement would not have been any higher. It notes that the insurance companies relied on exclusions in their policies for "an offense committed by an insured whose businesses are advertising, publishing or telecasting," and that this exclusion would therefore apply regardless of what claims were asserted. Clear Channel also notes that " 'the intentional acts' upon which both insurance companies relied in rejecting coverage were the publication of material with knowledge of its falsity" and these acts would also apply to the defamation claims. *See* Reply Memorandum of Law in Further Support of Clear Channel's Motion to Amend, dated June 5, 2002, at 8.

R.Civ.P. 12(b)(6). *Nettis v. Levitt*, 241 F.3d 186, 194 n. 4 (2d Cir.2001). Accordingly, the Court should accept the allegations in the proposed amended complaint as true and should not preclude the addition of the proposed claim on the ground of futility "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Inside Radio argues that the amendment is futile because the allegedly defamatory statements at issue "are not susceptible to a defamatory meaning" and because Clear Channel "utterly fails to allege special damages." Opp. Mem. at 8. With respect to the first point, the proposed Second Amended Complaint includes allegations that Inside Radio falsely reported that Clear Channel planned to cut vacation days for certain employees, cut the compensation for salespeople, was implementing a program of layoffs, was making "massive budget cuts," ordered its stations to buy syndicated programming only from Clear Channel, and threw a party for some employees even as other employees were being fired. *See* Second Amended Complaint at 4–5. To support its assertion that none of these statements can be defamatory as a matter of law, Inside Radio points to a single case holding only that a letter praising the qualities and competence of a company's ex-employee—but which included a statement that the employee had taken with him a number of the company's accounts—was not susceptible of a defamatory meaning. *Musser v. Smith Protective Servs.*, 723 S.W.2d 653 (Tex.1987).[3]

*Musser* is simply inapplicable to the statements at issue here as they contain no praise for Clear Channel. " 'A statement is defamatory [under Texas law] if the words tend to injure a person's reputation, exposing the person to public hatred, contempt, ridicule, or financial injury.' " *Burch v. Coca-Cola Co.*, 119 F.3d 305, 325 (5th Cir.1997) (quoting *McKethan v. Texas Farm Bureau*, 996 F.2d 734, 743 (5th Cir.1993), *cert. denied*, 510 U.S. 1046, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994)), *cert. denied*, 522 U.S. 1084, 118 S.Ct. 871, 139 L.Ed.2d 768 (1998). The statements in the proposed Second Amended Complaint are defamatory because they either imply or directly state that Clear Channel is having financial problems and treats its employees badly. Thus, if false, they would injure Clear Channel's reputation and expose it to public hatred, contempt or financial injury.

■ Finally, the proposed claim is not defective for failing to allege special damages. Under Texas law, a plaintiff alleging defamation based on libel (that is, written statements) need not allege special damages. *Swate v. Schiffers*, 975 S.W.2d 70, 74 (Tex.App.1998); ("[t]he effect of pleading libel per se is to eliminate the requirement for pleading or proving special damages"); *Bell Publishing Co. v. Garrett Engineering Co.*, 141 Tex. 51, 170 S.W.2d 197, 202–03 (1943) ("[t]he publication of any libel is actionable per se, that is irrespective of whether any harm has been caused to the plaintiff's reputation or otherwise") (citation omitted); *see also* Restatement (2d) Torts § 569 (1976) ("One who falsely publishes matter defamatory of another in such a manner as to make the publication a libel is subject to liability to

---

**3.** The parties assume that Texas law would govern the defamation claim and the Court also so assumes.

the other although no special harm results from the publication.").

Accordingly, the motion to amend will not be denied on the ground that the defamation claim in Clear Channel's proposed amended complaint is futile.

*CONCLUSION*

None of the factors supporting denial of leave to amend are present in this case. Accordingly, Clear Channel's motion for leave to file the proposed Second Amended Complaint is granted.